**In re COMMUNITY HOSPITAL OF THE VALLEYS, a California corporation, Debtor.**

**CALIFORNIA DEPARTMENT OF HEALTH SERVICES, Creditor and Appellant,**

v.

**UNITED STATES BANKRUPTCY COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Appellee.**

**Timothy L. Donovan, Trustee for Community Hospital of the Valleys, Real Party in Interest.**

**BAP No. CC–82–1423–PVAb.**
**Bankruptcy No. SB 81–01171–WH.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued June 24, 1983.

Decided Feb. 22, 1985.

G.R. Overton, Deputy Atty. Gen., of State of Cal., Los Angeles, Cal., for creditor and appellant.

Philip B. Wagner, Wagner & Oros, Law Corporation, San Bernardino, Cal., for appellee.

Before VOLINN, ABRAHAMS, and PYLE, Bankruptcy Judges.[1]

## OPINION

PER CURIAM.

An appeal has been taken, in this case, from an order of the trial court confirming the trustee's plan of reorganization. We affirm.

### I. BACKGROUND

The debtor, COMMUNITY HOSPITAL OF THE VALLEYS ("Community Hospital"), was incorporated to own and operate a not-for-profit hospital. Shortly after its incorporation, the debtor entered into an "ancillary" services agreement with PERRIS VALLEY SCIENTIFIC, INC. ("PVS"), an entity incorporated on the same day and having some of the same principals as the debtor. Part of this agreement called for a loan of some $210,000 from PVS to the debtor. This loan was secured by hospital assets, including its accounts receivable. The agreement further required that MEDICAL ENVIRONMENTS, INC., another corporate entity sharing principals with Community Hospital and PVS, provide the debtor with management services.

1. NOTE: This case was argued before Judges Volinn, Abrahams, and George but not decided when the Bankruptcy Amendments and Federal Judgeship Act of 1984 went into effect on July 10, 1984. Judge George was appointed as a Judge of the District Court of Nevada in the period between argument and decision. Since July 10, 1984, the parties to this appeal have consented to its determination by the newly constituted Bankruptcy Appellate Panels of the Ninth Circuit in accordance with 28 U.S.C. § 158(b). Bankruptcy Judge Ross M. Pyle of the Southern District of California was designated to replace Judge George in the consideration and determination of this matter.

Pursuant to this agreement, the debtor subsequently incurred further debts to PVS. Among these was a $475,759.71 promissory note obligation, also allegedly secured by hospital assets. By the time the debtor filed its application to convert the Chapter 7 involuntary case against it to a voluntary Chapter 11 case, on May 11, 1981, the PVS claim purportedly stood at approximately $1,357.118. Of this amount, about $671,358 was said to be secured by property of the debtor's estate. This claim, was initially subject to dispute by the trustee assigned to this case.

On July 23, 1981, the trustee filed an application to compromise the PVS claim, notice of which was apparently given to all creditors. No objections to this application were filed and, after a hearing on this request, the court below entered an order approving the trustee's compromise on August 3, 1981. No appeal was ever taken from that order.

For purposes of this appeal, the more significant provisions of this compromise are found in paragraphs 8. and 9., which read, in pertinent part:

8. After careful analysis of the laws and facts surrounding this issue, by both the Trustee and Perris Valley Scientific, and without admitting any liability or any facts as to the related party issue, Perris Valley Scientific and the Trustee herein have independently come to the conclusion that it would be in the best interest of the estate to compromise any potential controversy regarding the issue of Perris Valley Scientific's claim and security interest's [sic] for all purposes within this estate.

9. ...

Now, therefore, in consideration for the mutual recitals set forth hereinbelow, and in light of the foregoing facts and circumstances, it is agreed:

a. For all purposes within this estate, the security agreement of Perris Valley Scientific to all presently existing and hereafter arising accounts receivable, instruments, documents, chattel paper, general intangibles, and all other forms of obligations owing to the debtor, equipment, inventory, money in deposit account, and any other tangible and intangible property of the debtor, including proceeds derived therefrom, and all proceeds of insurance, all guarantees and other security interests therefore, and specifically the security interest in the license of the facility and the hospital operating license is deemed to be a validly pledged and perfected security interest to Perris Valley Scientific.

b. The amount of $1,360,202.00 as reflected in the original A–2 schedule of the debtor is deemed to be the amount of Perris Valley Scientific's claim.

c. This estate, through its Trustee, and Perris Valley Scientific shall share in the net proceeds in all items of the collateral recovered and liquidated for the benefit of this estate as follows:

I. Perris Valley Scientific is to receive 80% of the net proceeds.

II. The estate, through its Trustee, is to receive 20% of all of the net proceeds.

.    .    .    .    .

e. Perris Valley Scientific shall subordinate its biforcated [sic] unsecured debt in this estate as set forth in 11 USC 506 to the claims of other unsecured creditors of this estate as duly scheduled by the debtor on the original A–2 schedule, and as approved and allowed.

f. [Sets forth the procedure for paying PVS and other creditors.]

On April 27, 1982, the trustee proposed a plan of reorganization, which provided for the complete liquidation of the debtor's assets and a subsequent distribution to four classes of creditors:

"(1) Administrative cost [sic] and expenses as defined by Title 11, United States Code, for which application is filed and to the extent allowed and ordered by the Court to be paid.

"(2)(a) Claims entitled to priority by sections 507(a)(3), wages, (a)(4), employee

benefits, and (a)(5), purchase money deposits, of said Title 11, as allowed and ordered by the Court to be paid.

(b) Claims entitled to priority by section 507(a)(6) (taxes) of said Title 11, as allowed and ordered by the Court to be paid.

"(3) Unsecured claims as finally allowed by the Court.

"(4) Funds held by Trustee for the benefit of Perris Valley Scientific."

Classes (1) and (2) were to be paid in cash, upon the confirmation of the plan. Class (4) was to be paid, as allowed by the compromise agreement, with distribution to PVS to be made concurrently with payments on unsecured claims. The Class (3) unsecured creditors would be paid pro rata, as quickly as the trustee could liquidate the debtor's assets.

On August 19, 1982, the appellant, CALIFORNIA DEPARTMENT OF HEALTH SERVICES ("CDHS"), filed an objection to the trustee's plan of reorganization. Of primary concern to the appellant was the treatment of PVS under the plan. Because of the close relationship and questionable dealings between PVS and the debtor, CDHS maintained that even the secured portion of the PVS claim should be subordinated to the claims of unsecured creditors. Otherwise, CDHS argued that the plan could not be deemed to have been proposed in good faith.

At the confirmation hearing held on the trustee's plan on September 10, 1982, both the appellant's good faith arguments and other grounds for objections were addressed. A secondary argument raised by the appellant dealt with an inadequacy in the amount of the claims that had accepted the trustee's plan. With respect to this latter concern, the trustee admitted that, while there existed a majority in the number of claims which had accepted the plan, if the disputed claims of CDHS and Medicare were considered, there was not a sufficient amount of claims which had been voted in favor of confirmation. Nevertheless, the trustee's attorney further argued

that, "under 1129(b), the Court should confirm this Plan."

During the course of this hearing, the appellant apparently sought to introduce evidence concerning the need for an equitable subordination of the PVS claim, but was never permitted to do so. Rather, without ever actually hearing evidence from either side, the trial court simply overruled the objections of CDHS and confirmed the trustee's plan. The order confirming the plan was entered on September 23, 1982, and this appeal was filed on September 29, 1982.

## II. ANALYSIS OF THE ISSUES OF FACT AND LAW

The appellant has presented the panel with six issues which it finds significant for purposes of this appeal. Four of these issues are procedural, the other two involve matters of substantive law. The first of the procedural questions addresses the trial court's alleged failure to make findings of fact and conclusions of law in support of its order of confirmation. A review of the excerpts of record provided us, however, reveals that the trial court did, in fact, enter findings of fact and conclusions of law in the body of its order. Since we have been given no reason to hold that the form of these findings and conclusions is defective, we must reject this basis for vacating the confirmation order of the lower court.

In any event, the real argument of the appellant does not appear to focus on the actual entry of findings or conclusions, but upon CDHS's claim that the trial court improperly failed to hear evidence sufficient to form a basis for adequate findings of fact. It is this claim which forms the foundation for the appellant's other three procedural issues: 1) that the trial court abused its discretion by "approving the plan of reorganization without taking evidence on the matters it is required to find pursuant to 11 U.S.C. § 1129," 2) that it abused its discretion by "failing to allow appellant to present evidence in support of its objection," and 3) that it abused its discretion by "failing to give appellant a

meaningful hearing on its objection to the plan within the requirements of the Fifth Amendment to the United States Constitution."

We can find no abuse of discretion in the trial court's refusal to entertain evidence on the appellant's "bad faith" objection to the trustee's plan. Despite its claims to the contrary, the heart of the CDHS "bad faith" objection to the trustee's plan was that the provisions incorporating the trustee's compromise with PVS were unfair and inequitable as to unsecured creditors.

Upon reviewing the compromise stipulation, we must conclude that this agreement was intended to settle all the disputes between these parties over the PVS claim. In this regard, the aforecited paragraph 8. of this document states the joint conclusion of the trustee and PVS that "it would be in the best interest of the estate to compromise *any potential controversy* regarding the issue of Perris Valley Scientific's *claim* and security interest's [sic] *for all purposes within this estate.*" (Emphasis supplied.)

The appellant does not contest the ability of the trustee to compromise a claim against the estate. This authority was plainly granted under Rule 919(a) of the former Federal Rules of Bankruptcy Procedure, applicable at the time in question. *See also* Bankruptcy Rule 9019(a)–(b). Neither does the appellant deny that it received notice of the trustee's application to compromise the PVS claim. And, we have been given no reason to suppose that this notice was so inadequate in its language and form as not to apprise the appellant of the terms of the compromise.

Under his plan, the trustee merely proposed to carry out his obligations to PVS, pursuant to the order of the court approving his compromise with that entity. Whether under principles relating to the doctrines of res judicata, collateral estoppel, or "law of the case," it was proper for the trial court to preclude a re-examination of its order approving the trustee's compromise.

■ The apparent failure of the trial court to entertain evidence on the other objections raised by the appellant is only slightly more troubling to the panel. Concerning the sufficiency of the amount of the claims accepting the trustee's plan, the trial record and the court's order of confirmation reflect little discussion of this issue. Nevertheless, counsel for the trustee did request that the plan be confirmed under 11 U.S.C. § 1129(b), in lieu of acceptance by the Class (3) creditors. No direct objection to this request was ever made by the appellant, the latter opting, instead, to argue only on the bona fides of the trustee's plan.

■ Only on appeal has the appellant raised the question of whether the plan was "fair and equitable," as is required by the "cram down" provisions of 11 U.S.C. § 1129(b). Aside from this contention being untimely, it again represents nothing more than a collateral attack on the trustee's compromise with PVS. Apart from this argument, the plan plainly comports with the more specific definition of a "fair and equitable" plan provided by subsection (2)(B) of 11 U.S.C. § 1129(b).

Although we agree that the trial court should have more fully addressed itself to the cram down issue at the September 20, 1982 hearing and in its September 23, 1982 order, it is apparent to this panel that the court below was aware of the need for a "cram down" of unsecured creditors and of the request for such by the trustee's attorney. Since no substantial basis has been set forth for overturning the trial court on this issue, we do not believe that the failure of the lower court to specifically state this ground in its findings and conclusions requires a reversal of its final order.

In addressing the appellant's procedural questions, its substantive objections seem also to have been satisfied. The trial court did not abuse its discretion in confirming the plan, despite an insufficient amount of accepting claims. The "cram down" provision of 11 U.S.C. § 1129(b) provided an adequate alternative to that requirement. And, once again, the trial court did not

clearly err in finding good faith in the proposal of the trustee's plan, when the sole argument made in favor of a bad faith finding represented only a collateral attack upon the court's earlier compromise order.

In this latter regard, the panel observes that CDHS has never suggested that the *trustee* lacked good faith in proposing his plan. The appellant only seems to question the trustee's wisdom in entering into the compromise with PVS and the good faith of PVS and the debtor concerning the PVS claim against this estate. Accepting, as true, the appellant's alleged factual support for this position, such facts would not have been sufficient to require the trial court to vacate its final order approving an arm's-length compromise between the trustee and PVS.

In arriving at each of the above conclusions, the panel is aware that the trustee's compromise of the PVS claim strongly affected his subsequent plan proposal. Similarly, the panel is conscious of the dangers inherent when a trustee or, even more so, a debtor-in-possession compromises a claim in order to circumvent statutory procedures for proposing and confirming a plan of reorganization. By proposing to pay a certain class of creditors in a certain way, a trustee may, in essence, be presenting an important part of his plan, without the need for a disclosure statement and with a greater limitation on the ability of creditors to object to that "plan."

■ Nevertheless, failing a demonstration of extreme neglect, improvidence, or bad faith, we believe that such concerns should be raised, and examined very closely, at the time of the hearing on the compromise. Otherwise, the authority of the trustee to enter into binding compromise agreements, approved by final court orders, would become largely ineffectual.

### III. CONCLUSION

The issues raised by the appellant, like the objections made by it below, constitute only a belated attempt to modify the terms of the trustee's earlier compromise with PVS. We must, therefore, hold that the confirmation order, now subject to appeal, was properly entered.

AFFIRMED.